UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

BAYLOR SCOTT & WHITE          §
HOLDINGS                      §
                              §
v.                            §          CIVIL NO. 4:22-CV-120-SDJ
                              §
FACTORY MUTUAL INSURANCE      §
COMPANY                       §

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Factory Mutual Insurance Company's Motion to Dismiss. (Dkt. #8). The Court held a hearing on the motion. (Dkt. #25). Having considered the motion, applicable law, extensive briefing—including supplemental briefing—by the parties, and argument presented at the hearing, the Court concludes that the motion should be **GRANTED**.

## I. BACKGROUND

This case involves an insurance coverage dispute stemming from losses related to COVID-19.[1] On October 31, 2019, Baylor Scott & White Holdings ("Baylor"), the largest non-profit health care system in Texas, and Factory Mutual Insurance Company ("FM"), an insurance company, executed an insurance policy (hereinafter, "Policy") covering Baylor's properties "against ALL RISKS OF PHYSICAL LOSS OR

---

[1] The Court acknowledges the distinction between SARS-CoV-2, a novel coronavirus, and COVID-19, the disease caused by SARS-CoV-2 viral infections. For purposes of this Memorandum Opinion and Order, however, the Court uses the term "COVID-19" as a blanket term that refers to both the virus and its effects. *See, e.g.*, *PS Bus. Mgmt., L.L.C. v. Fireman's Fund Ins. Co.*, No. 21-30723, 2022 WL 2462065, at *3 (5th Cir. July 6, 2022) (doing the same). The parties do not contend that any practical difference between these terms impacts the applicability of coverage under the insurance policy or the outcome of the instant motion to dismiss.

1

DAMAGE" from November 1, 2019, through November 1, 2020. (Dkt. #6-1 at 2, 9).[2] The term "physical loss or damage" is not defined in the Policy.

The Policy includes two primary types of insurance benefits that Baylor can claim because of "physical loss or damage" to its covered properties. The first is "property damage" coverage, which insures repairs to the properties themselves. (Dkt. #6-1 at 16–43). And the second is "time element" coverage, which covers either "GROSS EARNINGS and [an] EXTENDED PERIOD OF LIABILITY" or "GROSS PROFIT" lost as a result of "physical loss or damage" to the properties. (Dkt. #6-1 at 44–65). The "time element" coverage continues until the properties can be repaired, replaced, or made ready for operations. (Dkt. #6-1 at 44–52). Together, these Policy provisions operate to compensate Baylor for the value of "physical loss or damage" to its properties, the gross earnings lost due to the "physical loss or damage," and the period of reduced business earnings while Baylor recovers from the period of loss.

The Policy also includes a "communicable disease" provision which covers "Actual Loss Sustained and EXTRA EXPENSE incurred" because of the "presence of [a] communicable disease." (Dkt. #6-1 at 63–64). "[C]ommunicable disease" is defined under the Policy as a disease which is "transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges, or [is] Legionellosis." (Dkt. #6-1 at 74–75). This provision can be triggered regardless of whether any "physical loss or damage" has occurred. The Policy caps coverage under this provision at a $5 million annual aggregate. (Dkt. #6-1 at 11).

---

[2] The "physical loss or damage" coverage applies to "property at any location purchased, leased, or rented by" Baylor. (Dkt. #6-1 at 28).

Finally, as relevant here, the Policy contains several exclusions to coverage, including the "loss of market or loss of use" exclusion. (Dkt. #6-1 at 17–21). An additional exclusion precludes coverage for "contaminations" unless such contamination is the direct result of "other physical damage not excluded by this Policy." (Dkt. #6-1 at 21). The "contamination" exclusion is defined as follows:

> 1) **contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If **contamination** due only to the actual not suspected presence of **contaminant(s)** directly results from other physical damage not excluded by this Policy, then only physical damage caused by such **contamination** may be insured.

(Dkt. #6-1 at 21) (emphases in original).

***

Beginning in early 2020, a global pandemic caused by COVID-19 forced Baylor to make substantial investments in its more than 1,100 facilities and change its administrative protocols to allow Baylor to safely treat patients during the ongoing public health crisis. (Dkt. #6 ¶¶ 15, 82–86). Because of COVID-19's unique characteristics as an airborne viral pathogen and its capacity to remain attached to surfaces for extended periods, Baylor claims that the remedial efforts it took resulted in $192 million of lost income. (Dkt. #6 ¶ 118). Baylor submitted insurance claims under the Policy for the costs borne across its covered healthcare facilities. (Dkt. #6 ¶¶ 115–18). FM denied Baylor's claims, (Dkt. #6 ¶ 121), though FM ultimately paid Baylor $5 million under the Policy's "communicable disease" coverage. (Dkt. #6 ¶¶ 15–16).

Baylor filed this lawsuit following FM's denial of coverage, alleging that FM (1) breached the Policy and (2) violated Section 542.060 of the Texas Insurance Code by "failing to timely pay Baylor's loss in connection with its claim." (Dkt. #6 ¶¶ 126–51). FM subsequently filed the instant motion to dismiss, which is fully briefed. The central dispute between the parties concerns (1) whether Baylor's properties sustained "physical loss or damage" due to COVID-19 to trigger the Policy's coverage and (2) whether the Policy's exclusions bar coverage beyond the $5 million "communicable disease" cap.

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plausibility means "more than a sheer possibility," but not necessarily a probability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When assessing a motion to dismiss under Rule 12(b)(6), the facts pleaded are entitled to a presumption of truth, but legal conclusions that lack factual support are not entitled to the same presumption. *Id.* The court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To determine whether the plaintiff has pleaded enough to "nudge its claims . . . across the line from conceivable to plausible," a court draws on its own common sense and judicial experience. *Iqbal*,

556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570) (cleaned up). This threshold is surpassed when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

In conducting this review, the court's inquiry is limited to "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

### III. DISCUSSION

The Court applies Texas law to the instant case as it involves a breach-of-contract dispute based on diversity jurisdiction. *Petrohawk Props., L.P. v. Chesapeake La., L.P.*, 689 F.3d 380, 387 (5th Cir. 2012) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)) ("When jurisdiction is based on diversity, we apply the substantive law of the forum state."). Under Texas law, "insurance policies are interpreted by the same principles as contract construction." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 454 (5th Cir. 2022) (citing *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010)). "The policy's terms are given their ordinary and generally-accepted meaning unless the policy shows the words were meant in a technical or different sense." *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010).

A policy is unambiguous where its "terms can be given definite or certain legal meaning." *Ferrer & Poirot, GP v. Cincinnati Ins. Co.*, 36 F.4th 656, 658 (5th Cir. 2022) (per curiam) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*,

907 S.W.2d 517, 520 (Tex. 1995) (per curiam)). Such unambiguous policies are enforceable "as written." *Pan Am Equities, Inc. v. Lexington Ins. Co.*, 959 F.3d 671, 674 (5th Cir. 2020). On the other hand, a policy is ambiguous where, after applying the rules of construction, it could have "more than one *reasonable* interpretation." *Terry Black's*, 22 F.4th at 455 (citing *Nat'l Union Fire*, 907 S.W.2d at 520) (emphasis added). "When an insurance policy is ambiguous, and the parties offer conflicting reasonable interpretations of the policy, Texas law favors adopting the interpretation in favor of the insured." *Id.* (citing *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015)).

## A. Breach-of-Contract Claims

In the instant case, Baylor alleges that FM breached the Policy's "time element" and "additional time element" provisions by denying coverage for Baylor's costs associated with retrofitting its healthcare facilities and losses incurred due to the COVID-19 pandemic. (Dkt. #6 ¶¶ 126–47). FM argues that Baylor's claims are not covered because Baylor's properties have not suffered "physical loss or damage," which is a prerequisite to coverage. Alternatively, FM contends that the "contamination" and "loss of use" exclusions bar coverage. FM also notes that it has already made payments under the only applicable Policy provision—the "communicable disease" provision, which does not require "physical loss or damage" to be triggered.

Baylor counters that: (1) COVID-19 tangibly alters property and thus it has suffered "physical loss or damage;" (2) the "contamination" exclusion does not apply to losses from "communicable diseases" because that interpretation would render the

Policy internally inconsistent; and (3) the "loss of use exclusion" is inapplicable. The Court finds these arguments unpersuasive and instead agrees with each of FM's contentions. Accordingly, the Court holds that Baylor has not pleaded cognizable breach-of-contract claims against FM. Baylor's arguments are addressed in turn.

### i.   Baylor has not plausibly alleged "physical loss or damage."

The parties contest whether the presence of COVID-19 in Baylor's covered facilities amounts to a "physical loss or damage," thus triggering the Policy's coverage "against ALL RISKS OF PHYSICAL LOSS OR DAMAGE." (Dkt. #6-1 at 9). Because "physical loss or damage" is not defined in the Policy, the Court must interpret the terms' plain meaning as dictated under Texas law. *Gilbert Tex. Const.*, 327 S.W.3d at 126.

### a.   Plain meaning of "physical loss or damage"

The Court need not begin its analysis from scratch in discerning the plain meaning of "physical loss or damage." Instead, the Court may rely on Fifth Circuit authority applying Texas law regarding the plain meaning of these terms. And Fifth Circuit precedent on this issue is clear—the presence of COVID-19 does not constitute a "physical loss or damage." Just last year, in *Terry Black's*, the Fifth Circuit analyzed the plain meaning of "physical loss" in an insurance policy under Texas law. 22 F.4th at 455–56. There, the court determined that a "physical loss" requires a showing of a "tangible alteration or deprivation of property"—i.e., that something "physical or

tangible happened" to the covered facilities. *Id.* at 456.[3] The Fifth Circuit concluded that the plaintiffs had not alleged a tangible alteration or deprivation of property by claiming that civil authorities had required closure of their restaurants since plaintiffs' "claimed loss [was] not about its property, but about its inability to provide dine-in services." *Id.*; *see also Aggie Invs., L.L.C. v. Cont'l Cas. Co.*, No. 21-40382, 2022 WL 257439, at *2 (5th Cir. Jan. 26, 2022) (per curiam) (denying petition for rehearing on the same grounds). The Fifth Circuit also noted that its holding conforms with seven of its sister circuits in finding that COVID-19 pandemic effects do not cause "physical loss of property." *Terry Black's*, 22 F.4th at 456–57 (compiling cases).

In *Ferrer*, a decision issued a few months after *Terry Black's*, the Fifth Circuit addressed once more whether an insured's inability to use their covered property due to the persistent threat of COVID-19 amounted to "physical loss" or "physical damage" under a Texas insurance policy. *Ferrer*, 36 F.4th at 658. The *Ferrer* plaintiff operated a law firm that sought to recover COVID-19-related lost income and expenses under its insurance policy. *Id.* Most of the plaintiff's workforce worked remotely during the pandemic, and the firm purchased equipment and supplies to prevent the spread of COVID-19, while facilitating remote work. *Id.* The defendant, an insurance company, denied coverage for the costs of the equipment and supplies and for the lost income, and the plaintiff sued for breach of contract. *Id.*

---

[3] In a footnote, the Fifth Circuit acknowledged that it was not addressing the plain meaning of "physical damage"—a term the court considered distinct from "physical loss," under Texas law, due to the two phrases' separation by the disjunctive "or"—as the plaintiff did not contest "physical damage" to its property. *Terry Black's*, 22 F.4th at 455 n.4.

As in *Terry Black's*, the Fifth Circuit in *Ferrer* affirmed dismissal of the case and held that the plaintiff failed to state a claim for relief because there was "no underlying physical loss or damage to [the] insured property" due to COVID-19. *Id.* But the *Ferrer* court went a step further than *Terry Black's*, reasoning that under Texas law, while "COVID-19 has wrought great physical harm to people, it does not physically damage property within the plain meaning of 'physical.'" *Id.* Thus, the *Ferrer* court determined that, because the plaintiff "was not deprived of its property nor was there a tangible alteration to its property, . . . there was no underlying direct loss to trigger coverage." *Id.* (cleaned up).

One month after *Ferrer*, the Fifth Circuit issued *PS Business Management*, a decision that revisited the issue of whether COVID-19 could trigger a "physical loss or damage" condition under an insurance policy. *PS Bus. Mgmt., L.L.C v. Fireman's Fund Ins. Co.*, No. 21-30723, 2022 WL 2462065, at *2–3 (5th Cir. July 6, 2022) (per curiam).[4] Just as in the instant case, the relevant policy provision in *PS Business Management* triggered recovery upon a showing of "physical loss or damage" to the property. *Id.* at *1. The Fifth Circuit affirmed the district court's rejection of the

---

[4] The Court notes that *PS Business Management* involved the interpretation of "physical loss or damage" under principles of Louisiana and New York law, rather than under Texas law. *PS Bus. Mgmt.*, 2022 WL 2462065, at *1–2. However, the relevant insurance policy provisions and factual allegations rejected in *PS Business Management* are sufficiently analogous to Baylor's claims to guide the Court's analysis here. The Court also finds *PS Business Management* instructive concerning how the Fifth Circuit would interpret "physical loss or damage" language under Texas law, particularly given the *PS Business Management* court's reliance on *Terry Black's*—a case applying Texas law—and its conformity with the reasoning in *Ferrer*—another case applying Texas law. *See id.* at *2. (defining "physical loss or damage" by citing *Terry Black's*, which interpreted the same contractual language under Texas law).

9

plaintiffs' argument that the financial losses they suffered due to COVID-19 qualified as "physical loss or damage" under the insurance policy because, the court reasoned, "COVID-19 is 'a virus that harms people, not property.'" *Id.* at *2–4 (quoting *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 403 (6th Cir. 2021)). The court further concluded that even though plaintiffs claimed that COVID-19 required them to clean physical items on their property—such as shirts that had allegedly been contaminated by the virus—this argument lacked merit as plaintiffs failed to allege "'that the *virus* altered' their property directly." *Id.* at *3 n.2 (emphasis in original) (quoting *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 335 (7th Cir. 2021) (finding COVID-19's "impact on physical property is inconsequential" because the virus "may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days")).

### b.  "Physical loss or damage" under the Policy

Baylor argues that these Fifth Circuit cases[5]—and specifically *Ferrer*—should not govern the outcome of this motion because Baylor's factual allegations with respect to COVID-19 are "demonstrably different" than those presented in the caselaw.[6] (Dkt. #16 at 16). Specifically, Baylor contends that COVID-19 "tangibly

---

[5] The Court notes that the parties did not reference *PS Business Management* in their initial or supplemental briefing, and thus that case is not the subject of Baylor's argument.

[6] In support of its position, Baylor cites *Cinemark Holdings, Inc. v. Factory Mutual Insurance Co.*, 500 F.Supp.3d 565 (E.D. Tex. 2021). (Dkt. #16 at 20). In that case, the court denied the defendant insurance company's motion for judgment on the pleadings because the plaintiff alleged "that COVID-19 was actually present and actually damaged the property by changing the content of the air." *Cinemark Holdings*, 500 F.Supp.3d at 569. But that case is a district court opinion that predates critical recent Fifth Circuit cases, including *Ferrer and*

changed the character and composition of the surfaces of Baylor's property by transforming their physical properties," attaching itself to surfaces and aerosols in the air, and thereby infecting people who touched those surfaces or breathed that air. (Dkt. #16 at 16–17). Baylor further alleges that due to COVID-19, "the physical character of the surfaces" became "more hydrophobic" and "their surface roughness measurably increased." (Dkt. #16 at 16–17). While the Court must accept these alleged facts as true in this motion-to-dismiss posture, it need not accept Baylor's

---

*Terry Black's*. Those Fifth Circuit cases contradict the holding in *Cinemark* and govern this Court's analysis.

Baylor also relies on *Live Nation Entertainment, Inc. v. Factory Mutual Insurance Co.*, No. CV21-00862, 2022 WL 390712 (C.D. Cal. Feb. 3, 2022), (Dkt. #16 at 15), in which the court noted that there was a split in authority among Ninth Circuit district courts regarding whether COVID-19 causes "physical loss or damage" and found more persuasive "[t]he position that the presence of COVID-19 is a physical intrusion that affects the integrity of a property." *Live Nation Enter.*, 2022 WL 390712, at *6–7. Unlike *Ferrer* and the other aforementioned Fifth Circuit cases, however, this case is nonbinding. Additionally, the *Live Nation Entertainment* court explicitly recognized that its approach was not the uniform approach in the Ninth Circuit. *Id.* at *6. Thus, this case does not move the needle in Baylor's favor.

While Baylor cites a few more cases in its response supporting its argument regarding the meaning of "physical loss or damage," each is a state court case from outside of Texas and thus holds minimal persuasive weight. *See* (Dkt. #16 at 21–22) (citing state trial court cases from, inter alia: Colorado, Nevada, New Hampshire, and New Jersey). Further, even if the Court were to consider these cases, they are countered by numerous other non-binding cases that support FM's position. *See, e.g., AU Health Sys., Inc. v. Affiliated FM Ins. Co.*, No. CV-121-019, 2022 WL 801513, at *7 (S.D. Ga. Mar. 15, 2022) ("Although Plaintiffs alleged the Insured Locations suffered from unbreathable air and surfaces covered in COVID-19, this is not the kind of 'actual' change required by Georgia courts.").

Finally, in its notice of supplemental authority, Baylor cites two Texas trial court decisions to buttress its position regarding COVID-19's ability to cause "physical loss or damage." *See* (Dkt. #26 at 1–2). But the Fifth Circuit's rule of orderliness "applies to *Erie* cases no less than cases interpreting federal law." *Coleman E. Adler & Sons, L.L.C. v. Axis Surplus Ins. Co.*, 49 F.4th 894, 898 (5th Cir. 2022). Because there has been "neither a clearly contrary subsequent holding of the highest court of [Texas] nor a subsequent statutory authority, squarely on point," nor a "subsequent decision from an intermediate [Texas] state court," these two Texas trial court cases do not disturb the precedential holdings set forth in *Terry Black's* and *Ferrer. Id.*

legal conclusion that such impacts on Baylor's insured properties constitute "physical loss or damage" under Texas law.[7]

Baylor attempts to distinguish *Ferrer*, arguing that: (1) it did not "involve the unique language of the FM policy"; and (2) the plaintiff in *Ferrer* did not allege the physical, tangible presence of COVID-19 at the insured facility.[8] (Dkt. #19 at 9). As to the former argument, Baylor contends that FM's "unique" Policy "recognizes that communicable disease *can* cause physical loss and damage." (Dkt. #19 at 9) (emphasis added). But just because a disease *can* cause physical damage, does not mean it necessarily *does* cause physical damage. And Baylor fails to plausibly allege how COVID-19's impact caused "physical loss or damage" to its property as those terms are defined under Texas law. Indeed, other courts have rejected this interpretation of an insurance policy where, as here, a separate, stand-alone provision covers communicable diseases. *See Cordish Cos. v. Affiliated FM Ins. Co.*, 573 F.Supp.3d 977, 1001 (D. Md. 2021) ("[T]he inclusion of a separate provision on damage caused by communicable diseases actually supports the insurer's argument. If the Policy

---

[7] Baylor also asks the Court to look to extraneous documents—namely, documents filed by FM in other cases—to find ambiguity in the Policy's language with respect to COVID-19's capacity to cause "physical loss or damage." (Dkt. #16 at 14–15). The Court declines to do so. It is well established that "extrinsic evidence cannot be admitted for the purpose of demonstrating the presence of an ambiguity" and that ambiguity "must be apparent within the four corners of the policy at issue." *Snelling and Snelling, Inc. v. Fed. Ins. Co.*, 205 F.App'x 199, 204 (5th Cir. 2006) (citing *Sydlik v. REEIII, Inc.*, 195 S.W.3d 329, 334 (Tex. App.— Houston [14th Dist.] 2006, no pet.)); *see also Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006) ("Courts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity.") (citing *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 732–33 (Tex. 1982)).

[8] Baylor offhandedly states that these same arguments apply to *Terry Black's* and *Aggie Investments* without providing any rationale as to why. (Dkt. #19 at 9) ("The same is true of *Terry Black's* and *Aggie Investments*.").

provided that communicable diseases cause physical loss or damage, then it would not have had to include a separate provision for coverage based on communicable disease."), *aff'd*, No. 21-2055, 2022 WL 1114373 (4th Cir. Apr. 14, 2022).

And as to Baylor's latter argument, the Fifth Circuit's decision in *Ferrer* makes clear that, even where the COVID-19 virus was present in a facility, it does not physically damage property so as to implicate a "physical loss or damage" under Texas insurance law. The *Ferrer* plaintiff argued that it had adequately alleged a "physical" loss because its pleading invoked the "physical" properties of the COVID-19 virus, the "physical" symptoms or effects of the virus, the "physical" spread or transmission of the virus, "physical" ways and means to prevent the spread of the virus, and the "physical" harm or loss of use of its insured property. *See Ferrer & Poirot GP v. Cincinnati Ins. Co.*, No. 3:20-CV-3286, 2021 WL 4260391, at *2 (N.D. Tex. Sept. 1, 2021) (cleaned up), *adopted by* 2021 WL 4260390 (N.D. Tex. Sept. 16, 2021). Although the *Ferrer* plaintiff did not plead that COVID-19 was present at its offices, it pleaded that the physical impact of the virus triggered coverage.

The Fifth Circuit disagreed, holding that there was no covered loss because "there was no underlying physical loss or damage to insured property." *Ferrer*, 36 F.4th at 659; *see also id.* ("As in *Terry Black's Barbecue*, there is no physical loss without "any tangible alteration or deprivation of [the insured's] property."). The *Ferrer* court went on to explain that, "[w]hile COVID-19 has wrought great physical harm to people," the virus "does not physically damage property within the plain meaning of 'physical.'" *Id.* at 660; *see also Terry Black's Barbecue, LLC v. State Auto.*

13

*Mut. Ins. Co.*, 514 F.Supp.3d 896, 907 (W.D. Tex. 2021) ("Even assuming that the virus that causes COVID-19 was present at Plaintiffs' properties, it would not constitute . . . direct physical loss or damage . . . because the virus can be eliminated. The virus does not threaten . . . structures . . ., and can be removed from surfaces with routine cleaning and disinfectant."), *aff'd*, 22 F.4th 450 (5th Cir. 2022). In sum, the Fifth Circuit has directly foreclosed Baylor's argument that the physical, tangible presence of COVID-19 at its facilities constituted "physical loss or damage" triggering coverage under FM's policy.

In this regard, Baylor fails to reconcile its claim with the Fifth Circuit's explanation of Texas law's plain reading of "physical loss or damage" to mean a "tangible alteration or deprivation of property." *Terry Black's*, 22 F.4th at 455–56; *see also Ferrer*, 36 F.4th at 658 (same). In applying that definition, the Fifth Circuit has consistently rejected arguments like Baylor's by holding that COVID-19's temporary, though persistent, attachment to surfaces or air particles fails to establish a "physical loss or damage" because "COVID-19 is a virus that injures people, not property."[9] *PS Bus. Mgmt.*, 2022 WL 2462065, at *3 (quotation omitted); *see also Terry Black's*, 22 F.4th at 455–57; *Ferrer*, 36 F.4th at 658; *Aggie Invs.*, 2022 WL 257439, at *2. Because Fifth Circuit precedent applying Texas law precludes Baylor's allegations of "physical loss or damage," the Court holds that Baylor has failed to sufficiently plead

---

[9] Indeed, district courts have applied the Fifth Circuit's interpretation of "physical loss or damage" language post-*Ferrer* and *PS Business Management. See, e.g.*, *Am. Liberty Hosp., Inc. v. Cont'l Cas. Co.*, No. H-22-01135, 2022 WL 2669465, at *2 (S.D. Tex. July 11, 2022) ("The Fifth Circuit has already rejected allegations that Covid-19 itself is a direct physical loss or damage to property.").

that it suffered a "physical loss or damage" due to COVID-19 under the Policy.[10] Accordingly, on that ground alone, Baylor's breach-of-contract claims fail.

### ii.  Policy exclusions for contamination and loss of use bar recovery

Even if the Court were to find that Baylor had plausibly alleged a "physical loss or damage" to its properties due to COVID-19—which it has not—Baylor's breach-of-contract claims nevertheless fail because the Policy's (1) "contamination" and (2) "loss of use" exclusions preclude additional coverage. At the outset, the Court notes that the parties agree that the Policy's "communicable disease" provision applies, and that FM has already paid Baylor $5 million, the maximum amount permitted under that provision.[11] (Dkt. #6 ¶¶ 115–16); (Dkt. #8 at 10); (Dkt. #6-1 at 11). With that provision fully paid, the only remaining issue is whether the "contamination" and "loss of use" exclusions bar *further* recovery—beyond the $5 million already paid—for Baylor's "physical loss or damage" due to COVID-19. The Court finds that they do.

---

[10] Because the Court rejects Baylor's primary contention that it experienced a "physical loss or damage" under the Policy due to COVID-19, it need not assess Baylor's derivative argument regarding the extent of that loss or damage. *See* (Dkt. #16 at 26–28) ("As a result, the extraordinary measures described above were required to repair the property *following the loss*.") (emphasis added).

[11] The "communicable disease" provision covers "Actual Loss Sustained and EXTRA EXPENSE incurred" because of the "presence of [a] communicable disease." (Dkt. #6-1 at 63–64). "[C]ommunicable disease" is defined under the Policy as a disease which is "transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges, or [is] Legionellosis." (Dkt. #6-1 at 74–75). As COVID-19 is not legionellosis, there is no dispute that the first part of the "communicable disease" provision was triggered.

### a.  Contamination exclusion

The Policy covers "all risks" from "physical loss or damage." (Dkt. #6-1 at 9). From that broad language, the Policy excludes from coverage—"unless directly resulting from other physical damage not excluded by this Policy"—"contamination, and any cost due to contamination, including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy." (Dkt. #6-1 at 21). The Policy defines "contamination" as "any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew." (Dkt. #6-1 at 75).

Baylor argues that this exclusion does not apply to its claim on two grounds. *First*, Baylor contends that the exclusion is inapplicable because COVID-19 falls under the Policy's "communicable disease" coverage, and the phrase "communicable disease" is not listed in the Policy's definition of "contamination." (Dkt. #16 at 29–34). And *second*, Baylor argues that the "contamination" provision applies only to "costs" and not "losses." (Dkt. #16 at 34–36). Neither argument carries the day.

As to the former argument, Baylor's reading of the "contamination" provision is inconsistent with its plain text. The Court, however, is bound to interpret the contractual terms by their "ordinary and generally-accepted meaning." *Gilbert Tex. Const.*, 327 S.W.3d at 126. Under such reading, "communicable disease," as defined by the Policy, invariably includes COVID-19. It is undisputed that COVID-19 is a virus. *See, e.g.*, (Dkt. #6 ¶ 2) (referring to the "spikes or clubs protruding from the *virus's* spherical casing") (emphasis added). And Baylor cannot in good faith argue

16

that COVID-19 is neither a "pathogen or pathogenic organism" nor a "disease or illness causing agent." *See, e.g.*, (Dkt. #6 ¶ 1) (stating that FM refused to "cover Baylor for its over $192 million in business interruption loss associated with the SARS CoV-2 coronavirus . . . and its resulting *disease*, COVID-19") (emphasis added).

Instead, Baylor argues that because COVID-19 falls under the Policy's "communicable disease" definition, it cannot also fall under the Policy's definition of "contamination" as the two are different terms and therefore must have distinct meanings. (Dkt. #16 at 31) ("Therefore, the term "virus," as used in the contamination exclusion, must mean viruses which are not transmissible from human to human."). But significantly, the parties agree that the "communicable disease" provision and the "contamination" exclusion apply in different circumstances—while the former applies even where no "physical loss or damage" has occurred, the latter only applies to a "physical loss or damage." *Compare* (Dkt. #16 at 15), *with* (Dkt. #18 at 3). Because these provisions apply in different circumstances, there is no conflict in finding that COVID-19 is covered under both definitions. *See Gilbert Tex. Const.*, 327 S.W.3d at 126 (citing *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 652 (Tex. 1999)) ("We examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless."). In fact, if the Court were to accept Baylor's preferred construction, it would have to add words not present in the Policy's "contamination" definition—i.e., add "non-transmissible" before "virus"— in direct contravention of Texas law that courts "honor the parties' agreement and

not remake their contract by reading additional provisions into it." *Id.* (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker,* 246 S.W.3d 603, 606 (Tex. 2008)).

Baylor also contends that, because its reading of the "communicable disease" and "contamination" provisions are reasonable, any ambiguity must be resolved in its favor. (Dkt. #16 at 34). The Court rejects Baylor's attempt to manufacture ambiguity in the language where none exists. Rather, the only reasonable interpretation of the "communicable disease" provision is as an extension of coverage, covering up to $5 million in costs related to communicable disease response that would not otherwise be covered because of the "contamination" exclusion.

As to the latter argument, Baylor contends that, because the "contamination" exclusion specifically references "costs," but not "losses," it does not apply to Baylor's "losses" due to COVID-19. (Dkt. #16 at 34–35). But again, Baylor asks the Court to ignore the plain meaning of the text—this time by reading out the first word of the "contamination" exclusion, namely "contamination." (Dkt. #6-1 at 21). If the exclusion applied only to "costs" and not to "losses," the addition of the term "contamination" preceding the "costs" clause would be superfluous. Because the Court is obligated to "give effect to all provisions so that none will be meaningless," the Court must give the initial term "contamination" independent meaning. *Gilbert Tex. Const.*, 327 S.W.3d at 126. As the parties agree that the "contamination" exclusion applies where a "physical loss or damage" has occurred, *see supra* p. 17, and the term "contamination" must have a different meaning than "costs," the Court finds that the

only reasonable construction of the provision is that the first use of "contamination" refers to losses caused by contamination.

Thus, because the only reasonable construction of the Policy's language permits COVID-19 to fall under both the "communicable disease" provision—which has already been paid in full—and the "contamination" exclusion, the Court finds that the "contamination" exclusion applies to Baylor's alleged losses. Accordingly, Baylor is barred from further recovery, and FM did not breach the Policy by refusing to cover those alleged "losses." *See, e.g.*, *Cordish Cos. v. Affiliated FM Ins. Co.*, 573 F.Supp.3d 977, 1006 (D. Md. 2021) ("[R]egardless of any other costs that may be excluded under the provision, the [contamination] exclusion can only be read as barring plaintiff's claims."), *aff'd*, No. 21-2055, 2022 WL 1114373 (4th Cir. Apr. 14, 2022); *Out W. Rest. Grp. v. Affiliated FM Ins. Co.*, No. 21-15585, 2022 WL 4007998, at *2 (9th Cir. Sept. 2, 2022) ("[T]o the extent that [the plaintiff] argues that [the] virus was otherwise present, the contamination exclusion would bar coverage under the direct physical loss or damage policy provisions."). *But see Thor Equities, LLC v. Factory Mut. Ins. Co.*, 531 F.Supp.3d 802, 808 (S.D.N.Y. 2021) (finding that the contamination exclusion was ambiguous as to whether it excluded losses due to COVID-19 or only costs due to COVID-19).

### b.  Loss of use exclusion

The Policy excludes from coverage "loss of market or loss of use." (Dkt. #6-1 at 18). Baylor argues that this exclusion does not bar its recovery under the Policy because the exclusion only applies to "losses suffered by reason of purely economic impacts." (Dkt. #16 at 36). FM does not dispute this reading of the provision, (Dkt. #8

19

at 30–31); (Dkt. #18 at 11), and the Court agrees that it is a correct reading of the Policy's language. *See, e.g.*, *La. Bone & Joint Clinic, L.L.C. v. Transp. Ins. Co.*, No. 21-30300, 2022 WL 910345, at *3 (5th Cir. Mar. 29, 2022) ("And finally, we note that the policy explicitly uses the phrase 'loss of use' elsewhere, suggesting a difference in the meanings of 'loss of property' and 'loss of use.' . . . The loss contemplated in the provision therefore must be physical (or tangible) whereas a loss of use would not necessarily be characterized in the same way."). However, because the Court finds that the "contamination exclusion" bars Baylor from recovering its "physical loss or damage," *see supra* Section III(A)(ii)(a), the "loss of use" exclusion bars any claim of losses due to COVID-19 not implicated by "physical loss or damage"—i.e., economic impacts.

And because the Policy excludes coverage of "contamination" and "loss of use," even if Baylor had sufficiently established "physical loss or damage" to its properties, Baylor has still failed to adequately allege breach-of-contract claims based on the Policy's express exclusions. Accordingly, the Court **GRANTS** FM's Motion to Dismiss Baylor's breach-of-contract claims.

## B. Extra-Contractual Claim

Because the Court finds that FM satisfied its obligations under the Policy and has not breached its contract with Baylor, Baylor's claim under Texas Insurance Code Section 542.060 for FM's alleged failure to timely pay under the Policy necessarily cannot succeed. *See* (Dkt. #6 ¶¶ 148–151). A plaintiff cannot prevail on its extra-

contractual prompt-payment claim "if the insurance claim is not covered by the policy." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 491 (Tex. 2018) (quoting *Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005)). Therefore, because Baylor's breach-of-contract claims fail, its derivative prompt-payment claim under Chapter 542 of the Texas Insurance Code similarly cannot succeed. Accordingly, the Court **GRANTS** FM's Motion to Dismiss Baylor's extra-contractual claim.

## IV. CONCLUSION

For the foregoing reasons, Factory Mutual Insurance Company's Motion to Dismiss, (Dkt. #8), is **GRANTED**.

It is further **ORDERED** that Plaintiff Baylor Scott & White Holdings' claims against Defendant Factory Mutual Insurance Company are **DISMISSED with prejudice**.

The Court will enter a final judgment by separate order.

**So ORDERED and SIGNED this 31st day of March, 2023.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE